IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BANCROFT LIFE & CASUALTY ICC, )
LTD., )
                              )
         Plaintiff, )
                              )
        v.               ) Civil Action No. 10-704
                              )
INTERCONTINENTAL MANAGEMENT, )
LTD d/b/a INTERCONTINENTAL )
CAPTIVE MANAGEMENT COMPANY, )
LTD., INTERCONTINENTAL )
MANAGEMENT, LTD., THE ROBERTS )
AND PATTON LAW FIRM, JOHN R. )
PATTON, ESQUIRE, GEORGE THOMAS )
ROBERTS, ESQUIRE, NIGEL BAILEY, )
CUNNINGHAM HUGHAN & COMPANY, )
INC. and THOMAS HUGHAN, C.P.A., )
                              )
        Defendants. )

## MEMORANDUM

### INTRODUCTION

Pending before the Court is a motion filed by Plaintiff, Bancroft Life & Casualty ICC, Ltd. ("Bancroft"), against Defendants Intercontinental Captive Management Company, Ltd. ("ICMC"), Intercontinental Management, Ltd. ("IML"), The Roberts and Patton Law Firm, John R. Patton, Esquire ("Patton"), George Thomas Roberts, Esquire ("Roberts") and Nigel Bailey ("Bailey") for a prejudgment asset freeze and prejudgment disclosure of property and assets. For the reasons set forth below, the motion will be denied.

BACKGROUND

Bancroft, an international insurance company domiciled in St. Lucia, initiated this civil action on May 21, 2010, by filing an *ex parte* motion for leave to file a complaint under seal. The motion was granted on May 26, 2010, and Bancroft's complaint, seeking legal and equitable relief, was filed the next day.[1]

On June 11, 2010, Bancroft filed the following motions against ICMC, a corporation organized in the United States Virgin Island (Bancroft's former, now defunct, management company), IML, a Pennsylvania corporation (a new management company for international insurers created by Roberts, Patton and Bailey in the spring of 2010),[2] Roberts and Patton and their law firm (Bancroft's general counsel and principals of ICMC and IML), and Bailey (a principal of both ICMC and IML) (collectively, "the Motion Defendants"):[3]

---

1. With regard to legal relief, Bancroft seeks damages for breach of fiduciary duty, fraud, conversion, professional malpractice, defamation, breach of contract, tortious interference with existing contractual relationships and tortious interference with prospective economic advantage. The equitable relief requested by Bancroft includes various forms of injunctive relief, an accounting and imposition of a constructive trust.

2. Bancroft maintains that ICMC was dissolved in early 2010 and IML created in anticipation of this lawsuit being filed. In this connection, the Court notes that some, if not all, of ICMC's assets were transferred to IML; that IML engages in the same line of business as the now defunct ICMC; that IML operates out of the former offices of ICMC; that IML's clients are ICMC's former clients; and that IML is owned by Roberts, Patton, Bailey and Stuart Schwab, ICMC's former owners.

3. ICMC subcontracted the preparation of Bancroft's tax returns to Defendants Cunningham Hughan & Company and Thomas Hughan, C.P.A. No relief as to either of these Defendants was sought in Bancroft's initial motions.

(a) a motion for a preliminary injunction seeking an Order

of Court directing ICMC/IML to return a computer server belonging

to Bancroft, as well as Bancroft's books and records, and

enjoining the Motion Defendants from continuing to interfere in

Bancroft's management of its incorporated cells,[4]

(b) a motion for a prejudgment asset freeze and prejudgment

disclosure of property and assets, seeking an Order of Court

freezing $6 million of the Motion Defendants' funds, and

(c) a motion for expedited financial discovery arising out

of Bancroft's claim that the Motion Defendants were secreting

assets to insulate themselves from any judgment that may be

entered in Bancroft's favor in this case.

In the brief in support filed contemporaneously with the

motion for expedited financial discovery, Bancroft expressed

confidence that, with one exception, it would be able to satisfy

the requirements for a preliminary injunction based on the facts

and evidence already in its possession.  The one exception

related to Bancroft's claim that the Motion Defendants were

secreting assets, including management fees owed to Bancroft by

two of its incorporated cells – Joyce IC and CDG IC.[5]  Because

_____

4. Bancroft's claims in this case arise, in large part, out of its
business as an incorporated cell company licensed to provide insurance
through separate companies called incorporated cells.  This model of
insurance business was explained at length in the Court's December 10,
2010 Opinion regarding Bancroft's motion for a preliminary injunction
and will not be repeated herein.
5. There is a dispute as to whether the management fees for Joyce IC and
CDG IC were to be paid to ICMC or to Bancroft.  ICMC offered evidence
during the preliminary injunction hearing that it was entitled to retain

(a) Bancroft already had extensive financial records ranging over several years, (b) Defendants claimed to have returned Bancroft's computer, computer-related items and other records in their possession, and (c) Bancroft did not identify the scope of the proposed expedited financial discovery, the Court concluded that Bancroft had failed to establish good cause for allowing expedited financial discovery and the motion was denied on July 23, 2010.

A hearing on Bancroft's motion for a preliminary injunction and motion for a prejudgment asset freeze and prejudgment disclosure of property and assets was held on August 4, August 5, August 18, August 19 and August 31, 2010. At the conclusion of the hearing, the parties were given the opportunity to file proposed findings of fact and conclusions of law. On December 21, 2010, the Court filed a lengthy Opinion setting forth its reasons for concluding that Bancroft was entitled to preliminary injunctive relief.

In the Preliminary Injunction Order accompanying the Court's December 21st Opinion, the Motion Defendants were directed to (a) immediately return any of Bancroft's property remaining in their possession; (b) permit Bancroft's forensic computer expert to copy the contents of a computer server at the offices of ICMC/IML

---

the management fees because Roberts introduced the owners of these ICs to Bancroft. Bancroft disputed this assertion. In any event, the management fees at issue were for 2010 and ICMC was no longer the manager for Bancroft's ICs in 2010. As a result, it had no basis for

that had been dedicated solely to Bancroft's records for the

expert's ease of review; and (c) provide an accounting to

Bancroft of all fees received from Bancroft's incorporated cells

since January 1, 2010.  In addition, the Preliminary Injunction

Order enjoined the Motion Defendants from any further

interference in Bancroft's efforts to maintain and manage its

incorporated cells in accordance with St. Lucia's International

Insurance Act, as amended in 2006, and its implementing

regulations.

The only remaining Bancroft motion seeking equitable relief

to be ruled upon is the motion for a prejudgment asset freeze and

prejudgment disclosure of assets and property.

## LEGAL STANDARD

Aside from the traditional showing necessary to obtain

preliminary injunctive relief,[6] a plaintiff may obtain a

prejudgment freeze on a defendant's assets only if he has

asserted a cognizable equitable claim; has demonstrated a

sufficient nexus between that claim and specific assets of the

defendant which are the target of the injunctive relief; and has

---

collecting management fees.
6. In order to obtain a preliminary injunction, the moving party must
demonstrate "(1) the reasonable probability of eventual success in the
litigation and (2) that the movant will be irreparably injured *pendente
lite* if relief is not granted.  Moreover, while the burden rests on the
moving party to make these two requisite showings, the district court
'should take into account, when they are relevant, (3) the possibility
of harm to other interested parties from the grant or denial of the
injunction, and (4) the public interest.'" Bennington Foods LLC v. St.
Croix Renaissance Group, LLP, 528 F.3d 176, 179 (3d Cir.2008), *quoting*

shown that the requested interim relief is a reasonable measure
to preserve the status quo in aid of the ultimate equitable
relief claimed. See U.S. ex rel. Rahman v. Oncology Assocs.,
P.C., 198 F.3d 489, 496-97 (4th Cir.1999). Prior to issuing a
preliminary injunction freezing a defendant's assets, "the court
must make some attempt to relate the value of the assets
encumbered to the likely value of the expected judgment."

DISCUSSION

Bancroft clearly asserts a cognizable equitable claim
against the Motion Defendants; i.e., an accounting and imposition
of a constructive trust on "all sums collected, held and properly
owing to [Bancroft]." (Complaint, p. 52). Thus, the first
requirement for a prejudgment asset freeze is satisfied.

Turning to the second requirement, however, Bancroft has
failed to establish a nexus between the $6 million on which it
seeks imposition of a constructive trust and specific assets of
the Motion Defendants. See Deckert v. Independence Shares Corp.,
311 U.S. 282 (1940)(In suit by purchasers of securities allegedly
sold through fraudulent misrepresentations where company to which
payments were made by purchasers as trustee for investment (at
the seller's direction) was made a party, grant of temporary
injunction restraining company from transferring or otherwise
disposing of money held in trust was not an abuse of discretion,

Instant Air Freight Co. v. C.F. Air Freight, Inc., 82 F.2d 797, 800 (3d
Cir.1989).

where bill alleged that seller was insolvent and its assets in danger of dissipation or depletion thus rendering legal remedy against seller "inadequate."); Elliott v. Kiesewetter, 98 F.3d 47 (3d Cir.1996)(Irreparable harm required to issue asset freeze order to protect future damages remedy existed when movants required order to protect against dissipation of very assets that they sought to recover in underlying accounting and fraudulent conveyance actions against family asset manager and his wife, jury in accounting action determined that movants would have received property, but for manager's unlawful conduct, and manager's sole source of income for numerous years was management of those assets; only way movants would be made whole would be to recover what was left of family assets and prevent further dissipation by manager). Rather, Bancroft seeks imposition of a constructive trust on millions of dollars without regard to the source of the money or the impact such an expansive constructive trust would have on the Motion Defendants.[7]

The Court further concludes that the third requirement for a prejudgment asset freeze has not been satisfied by Bancroft. Specifically, based on the evidence presented at the preliminary injunction hearing, the Court is unable to conclude that a

---

7. Without explanation, Bancroft proposes apportioning the $6 million in funds it is seeking to have frozen by the Court as follows: Roberts - $2 million; Patton - $1 million; The Roberts and Patton Law Firm - $1 million; IML - $1 million; and Bailey - $1 million. (Docket No. 13-1, p. 2).

constructive trust totaling $6 million is reasonable to preserve the status quo pending the resolution of this case.

Based on the foregoing, Bancroft's motion for a prejudgment asset freeze and prejudgment disclosure of assets and property will be denied.

_William L. Standish_
William L. Standish
United States District Judge

Date: February 22, 2011

8