IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BANCROFT LIFE & CASUALTY ICC, LTD., | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 10-704<br>) |
| INTERCONTINENTAL MANAGEMENT, LTD d/b/a INTERCONTINENTAL CAPTIVE MANAGEMENT COMPANY, LTD., INTERCONTINENTAL MANAGEMENT, LTD., THE ROBERTS AND PATTON LAW FIRM, JOHN R. PATTON, ESQUIRE, GEORGE THOMAS ROBERTS, ESQUIRE, NIGEL BAILEY, CUNNINGHAM HUGHAN & COMPANY, INC. and THOMAS HUGHAN, C.P.A., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

MEMORANDUM

I

For the reasons set forth below, the motion of Plaintiff, Bancroft Life & Casualty ICC, Ltd. ("Bancroft"), to dismiss the counterclaim for breach of contract asserted by Defendants Intercontinental Management, Ltd. ("IML"), The Roberts and Patton Law Firm, John R. Patton, Esquire ("Patton"), George Thomas Roberts, Esquire ("Roberts") and Nigel Bailey ("Bailey") in their answer to Bancroft's complaint will be granted. Further, Bancroft's motion to dismiss the claim for indemnification in paragraph 291 of the counterclaim and the claim for damages for unspecified conduct in paragraph 292 of the counterclaim will be granted.

1

II

The following facts are based on the evidence offered by the parties at the hearing on Bancroft's motion for a preliminary injunction against Intercontinental Captive Management Company, Ltd. ("ICMC"), IML, The Roberts and Patton Law Firm, Patton, Roberts and Bailey and are not in dispute:

Bancroft is an international insurance company domiciled in St. Lucia in the Caribbean. At the time of its formation in 2003, Bancroft retained Roberts and Patton as its general counsel. In addition to being a partner in The Roberts and Patton Law Firm, which was located in Ligonier, Pennsylvania, Roberts was the president of ICMC, a corporation organized in 2000 in St. Thomas, United States Virgin Islands to provide management and administrative services to international insurance companies.[1]

On October 15, 2004, Bancroft entered into an agreement with ICMC for the provision of management and administrative services ("the management agreement") based on the recommendation of Roberts. Among other things, ICMC was responsible for the preparation of Bancroft's tax returns. ICMC subcontracted this responsibility to Defendants Thomas Hughan, C.P.A. ("Hughan") and Cunningham Hughan & Company, Inc. ("CHC"). In the summer of 2009, Bancroft expressed dissatisfaction with the management and

---

1. Patton and Bailey and Stewart Schwab were vice presidents of ICMC.

administrative services being provided by ICMC and the principals of Bancroft and ICMC began discussing termination of the management agreement. In early October 2009, Bancroft gave ICMC written notice of its termination of the management agreement.[2] Two months later, ICMC, which claims that it did not receive Bancroft's notice, gave Bancroft written notice of its termination of the management agreement.

ICMC ceased business in January 2010, and, a month later, its assets were transferred to IML, a Pennsylvania corporation organized by ICMC's former principals, Roberts, Patton, Bailey and Stewart Schwab. IML provides the same management and administrative services previously provided by ICMC. Moreover, IML operates from ICMC's former location and its clients are ICMC's former clients.

This civil action arises out of the management and administrative services provided by ICMC and its subcontractors to Bancroft, as well as certain conduct of ICMC's principals while the management agreement was in effect and after its termination. Bancroft asserts claims for breach of fiduciary duty (against Roberts and Patton and their law firm and against ICMC), fraud (against ICMC, Roberts and Bailey), conversion (against ICMC), malpractice (against Hughan and CHC and against Roberts and Patton and their law firm), defamation (against ICMC,

---

2. At the time of Bancroft's written notice of termination of the management agreement in October 2009, The Roberts and Patton Law Firm

IML and Roberts), breach of contract (against Roberts and against ICMC), tortious interference with existing contractual relationships (against ICMC, IML, Roberts, Patton and Bailey) and tortious interference with prospective economic advantage (against ICMC, IML, Roberts, Patton and Bailey).[3]

In their answer to Bancroft's complaint, ICMC, IML, Roberts and Patton and their law firm and Bailey assert a counterclaim against Bancroft for breach of contract.[4] The Counterclaimants seek damages in the amount of $148,344.98 for Bancroft's alleged breach of the management agreement, as well as indemnification pursuant to a provision in the management agreement and, "to the extent that Bancroft's conduct has caused or continues to cause harm" to the Counterclaimants, a "claim ... for any and all damages suffered as a result of said conduct." (Docket No. 41, ¶¶ 283-292).

Pursuant to Fed.R.Civ.P. 12(b)(6), Bancroft seeks dismissal of the counterclaim for breach of contract asserted by all of the Counterclaimants except ICMC, as well as dismissal of the claim for indemnification and the "catch-all" claim.

---

was in the process of dissolution.
3. Bancroft also sought injunctive relief against ICMC, IML, Roberts and Patton and their law firm and Bailey, which has been granted in part (Docket Nos. 93 and 94) and denied in part (Docket Nos. 113 and 114).
4. Hughan and CHC filed a separate answer to Bancroft's complaint which does not include any counterclaims. (Docket No. 48).

4

### III

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is to give the defendant fair notice of what the claim is and the grounds upon which it rests.

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court abrogated the oft-repeated standard for dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) enunciated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), *i.e.*, that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Following Twombly, a plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. 550 U.S. at 570. See also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'").

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). With respect to this task, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir.2009), the Court of Appeals for the Third Circuit noted that

> "..., after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1949...."

578 F.3d at 210-11.

IV

**BREACH OF CONTRACT**

The management agreement between Bancroft and ICMC was governed by the laws of the United States Virgin Islands. (Docket No. 1, Exh. A, p. 6, § 15). To state a claim for breach of contract under Virgin Islands law, a plaintiff must allege (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages. See Arlington Funding Services,

Inc. v. Geigel, 2009 WL 357944, S.Ct. Civ. No. 2008-007, at *8 (V.I., Feb. 9, 2009).

In summary, the counterclaim for breach of contract alleges that, beginning in 2004, ICMC entered into a contract with Bancroft for managerial and other services; that the contract between Bancroft and ICMC subsequently was modified orally and by the parties' course of dealing; that ICMC provided Bancroft with written notice of its termination of the management contract on December 9, 2009, due to Bancroft's failure to pay invoices submitted by ICMC for services provided to Bancroft; that the "total amount due ICMC by Bancroft" is $148,344.98; and that ICMC has suffered damages as a result of Bancroft's breach of the contract with ICMC.

Because the only Counterclaimant to allege a contract with Bancroft, a breach of that contract and damages resulting from the alleged breach is ICMC, the Court agrees with Bancroft that IML, Roberts and Patton and their law firm and Bailey have failed to state a breach of contract claim. Under the circumstances, Bancroft's motion to dismiss the counterclaim for breach of contract asserted by IML, Roberts and Patton and their law firm and Bailey will be granted.

## INDEMNIFICATION

With regard to indemnification, the Counterclaim against Bancroft states:

> 291) Further, the written agreement referred to above contains provisions requiring the indemnification of ICMC and others by Bancroft as specified therein. Demand is hereby made by each of These Defendants, to the extent that any one of These Defendants come within the scope of said indemnification requirement, for the payment of all costs, fees and damages required to be paid by Bancroft pursuant to the indemnification obligation as part of this Counterclaim in an amount to be shown at trial or otherwise in these proceedings.[5]

(Docket No. 41, p. 20, ¶ 291).

Bancroft asserts that the Counterclaimants have failed adequately to plead a claim for indemnification and, after consideration, the Court agrees. As noted Bancroft, none of the Counterclaimants specifically allege that they have suffered an indemnifiable loss within the scope of the indemnification provision in the management agreement. Under the circumstances,

---

5. The indemnity provision in the management agreement that is the subject of the counterclaim against Bancroft provides:

> [Bancroft] will indemnify, defend and hold harmless [ICMC], its directors, officers, shareholders, agents and employees and each of them against any liability, actions, proceedings, claims, demands, costs or expenses whatsoever, including but not limited to exemplary or punitive damages which they or any of them may incur or be subject to in consequence of this Agreement or result from the performance of [Bancroft] in carrying out the functions and services provided for hereunder, except as such costs and liabilities are the result of the negligent acts or omissions, dishonesty or willful default of [ICMC] or any of its directors, officers, shareholders, employees and agents, as the case may be. This indemnity shall expressly inure to the benefit of any director, shareholder agent, or officer, or employee of [ICMC], existing or future, and to the benefit of any successor owner hereunder. (Docket No. 1, Exh. A, p. 6, § 11).

Bancroft's motion to dismiss also will be granted with respect to the indemnification claim by the Counterclaimants. The dismissal, however, is without prejudice.

**CATCH-ALL CLAIM**

Finally, Bancroft seeks dismissal of the Counterclaimants' "catch-all" claim which states:

> 292) To the extent that Bancroft's conduct has caused or continues to cause harm to These Defendants, claim is made for any and all damages suffered as a result of said conduct.

Bancroft contends that the "catch-all" claim fails to state a claim upon which relief may be granted, and, again, the Court agrees. As noted by Bancroft, the "catch-all" claim fails to identify any cognizable legal theory or any conduct by Bancroft that caused harm to any of the Counterclaimants. Consequently, Bancroft's motion to dismiss the "catch-all" claim asserted by the Counterclaimants also will be granted.

_____
William L. Standish
United States District Judge

Date: February 24, 2011