IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVNIA

BANCROFT LIFE & CASUALTY )
ICC, LTD., )
 )
    Plaintiff, )
 )
    vs. ) Civil Action No. 10-704
 )
INTERCONTINENTAL MANAGEMENT )
LTD. d/b/a INTERNCONTINENTAL )
CAPTIVE MANAGEMENT COMPANY, )
LTD., INTERCONTINENTAL )
MANAGEMENT, LTD., THE ROBERTS )
AND PATTON LAW FIRM, JOHN R. )
PATTON, ESQ., GEORGE THOMAS )
ROBERTS, ESQ., NIGEL BAILEY, )
CUNNINGHAM HUGHAN & COMPANY, )
THOMAS HUGHAN, C.P.A., DERNAR )
& ASSOCIATES, LLC, and DAVID )
K. DERNAR, C.P.A., )
 )
    Defendants. )

**MEMORANDUM**

**INTRODUCTION**

In Count V of its Second Amended Complaint, Plaintiff, Bancroft Life & Casualty ICC, Ltd. ("Bancroft"), asserts a claim against Defendants Cunningham Hughan & Company ("CHC") and Thomas Hughan, C.P.A. ("Hughan")(collectively, "the Hughan Defendants"), for professional negligence under Pennsylvania law. Before the Court is the Hughan Defendants' motion to dismiss the claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion to dismiss will be denied.

1

**FACTUAL ALLEGATIONS**

The allegations of Bancroft's Second Amended Complaint that are relevant for purposes of the present motion to dismiss may be summarized as follows:

Bancroft is an international insurance company headquartered and licensed to do business in St. Lucia. On October 15, 2004, Bancroft entered into a management agreement with Defendant Intercontinental Management, Ltd., doing business as Intercontinental Captive Management Company, Ltd. ("ICMC"). Two of ICMC's principals, Defendants John R. Patton, Esquire ("Patton") and George Thomas Roberts, Esquire ("Roberts"), who held themselves out as experts in insurance regulation and taxation, were retained to serve as Bancroft's outside general counsel. Thereafter, the principals of Bancroft entrusted ICMC with its day-to-day operations and entrusted Patton and Roberts with all of Bancroft's regulatory compliance and tax issues. (Docket No. 262, § 1, p. 2).

Rather than serve Bancroft's best interests while managing its day-to-day operations, ICMC, Patton, Roberts and ICMC's other principal, Defendant Nigel Bailey, worked against Bancroft, elevating their own interests above the interests of Bancroft. ICMC billed Bancroft for hundreds of thousands of dollars for services that either were not performed or performed so poorly that it was as if the services had not been performed

2

at all. In addition, the accounting services provided to Bancroft by ICMC and its subcontractors were "atrocious, completely unreliable, and caused Bancroft to suffer increased regulatory scrutiny from the St. Lucia Ministry of Finance and the United States Internal Revenue Service." (Docket No. 262, § 1, pp. 2-3).

In October 2009, following its discovery of how poorly ICMC and its principals were performing their management services, Bancroft terminated the management agreement with ICMC. Bancroft replaced ICMC with CBIZ, an accounting firm, which currently serves as Bancroft's third-party administrator. (Docket No. 262, § 1, p. 4).

CHC is a professional accounting corporation with a principal place of business in Carnegie, Pennsylvania. Hughan is a certified public accountant and an owner/employee of CHC. Hughan was hired by ICMC to prepare Bancroft's 2007 and 2008 federal tax returns. (Docket No. 262, ¶¶ 9-10, ¶ 192).

Bancroft's federal tax return for 2008, which was due March 15, 2009, was not shown to Bancroft's principals prior to filing. Roberts signed the 2008 tax return as vice president of Bancroft, which he was not, on September 15, 2009. There is no evidence indicating that a request for extension of the filing deadline was made by ICMC or the Hughan Defendants. (Docket No. 262, ¶ 82). The deductions in Bancroft's 2008 tax return do not

3

correlate with its financial statements, causing the accuracy of the tax return to be called into question by the Internal Revenue Service. (Docket No. 262, ¶ 83).

In the performance of their accounting services, the Hughan Defendants owed Bancroft a duty to use the skill, prudence and diligence commonly possessed and exercised by members of the accounting profession. The Hughan Defendants breached their duty to Bancroft by failing to prepare Bancroft's tax returns in a timely fashion and by preparing tax returns that did not accurately reflect Bancroft's income, expenses and reserves. The Hughan Defendants' breaches of their duty to Bancroft have resulted in the Internal Revenue Service questioning Bancroft's tax return for 2008 and have caused Bancroft to be out of compliance with the laws and regulations governing insurance companies in St. Lucia. (Docket No. 262, §§ 193-95).

**LEGAL STANDARDS**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is to give the defendant fair notice of what the claim is and the grounds upon which it rests.

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court abrogated the oft-repeated standard

4

enunciated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), for dismissal of a complaint for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), *i.e.*, that a complaint cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Following Twombly, a plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. 550 U.S. at 570. See also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'").

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Regarding this task, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), the Court of Appeals for the Third Circuit noted that

> "..., after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at

5

> 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1949...."
>
> * * *

578 F.3d at 210-11.

In sum, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime from a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S.Ct. at 1950.

**APPLICABLE LAW**

Professionals have a duty to perform their services with the "skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement (Second) of Torts § 299A. To establish a claim of professional negligence under Pennsylvania law, which the parties agree applies in this case, a plaintiff must establish that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was actually harmed; and (4) the defendant's breach caused that harm. In re: Citx Corp., Inc., 448 F.3d 672, 677 (3d Cir.2006), *citing* Martin v. Evans, 551 Pa. 496, 711 A.2d 458 (1998).

6

The specific scope of an accountant's duty to a client is determined primarily by the terms and conditions of the contract of employment.[1] Robert Wooler Co. v. Fidelity Bank, 330 Pa.Super. 523, 531, 479 A.2d 1027, 1031 (1984), citing O'Neill v. Atlas Auto. Finance Corp., 139 Pa.Super. 346, 11 A.2d 782 (1940). Although the scope of an accountant's duties are defined by contract, an accountant can breach his professional duties to a client if he encounters glaring irregularities or illegal activities - "red flags" - and fails to disclose them to the client. Seitz v. Detweiler, Hershey and Associates, P.C., Misc. No. 03-cv-6766, 2005 U.S. Dist. LEXIS 11374, at *11 (June 7, 2005), citing Wooler, supra, 479 A.2d at 1032 (holding that accountant's contract disclaimers did not shield it from liability if it ignored "suspicious circumstances which would have raised a 'red flag' for a reasonably skilled and knowledgeable accountant.").

**DISCUSSION**

I

Defendant Dernar & Associates, LLC ("D&A"), an accounting firm, and Defendant David K. Dernar, C.P.A., an owner/employee of D&A (collectively, "the Dernar Defendants"), were retained by ICMC to prepare financial statements and semi-annual reports for

---

[1] In the present case, the Hughan Defendants assert, and Bancroft does not dispute, that they were retained by ICMC to prepare Bancroft's 2007 and 2008 federal tax returns pursuant to oral agreements.

Bancroft and affiliated entities. In Count VI of the Second Amended Complaint, Bancroft asserts a claim of professional negligence arising out of the accounting services provided by the Dernar Defendants.

The Dernar Defendants moved to dismiss Count VI arguing, among other things, that (a) Pennsylvania law requires strict privity of contract between a plaintiff and a defendant for the plaintiff to maintain a claim of professional negligence against the defendant; (b) the allegations of Bancroft's second amended complaint show that their agreements to perform the accounting services at issue were made with ICMC, rather than Bancroft; and (c) therefore, Bancroft does not have standing to maintain a professional negligence claim against them. (Docket No. 270, pp. 31-32).

In a Memorandum Opinion filed June 12, 2012, the Court rejected the Dernar Defendants' standing argument based on Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983). Specifically, the Court interpreted the Pennsylvania Supreme Court's decision in Guy as permitting a professional negligence claim in the absence of strict privity of contract where the professional specifically undertook to furnish services for the plaintiff. Because the second amended complaint alleges the Dernar Defendants were retained by ICMC to perform specific services for Bancroft and Bancroft paid for those services, the Court

concluded that Bancroft has standing to maintain a professional negligence claim against the Dernar Defendants. (Docket No. 307, pp. 13-20).

The Hughan Defendants raise the identical argument in support of their motion to dismiss the professional negligence claim in Count V of Bancroft's Second Amended Complaint. For the reasons set forth in the Court's June 12, 2012 Memorandum Opinion rejecting this argument by the Dernar Defendants, the Hughan Defendants' standing argument also is rejected. In sum, Bancroft's Second Amended Complaint alleges that the Hughan Defendants were retained by ICMC to perform specific accounting services for Bancroft, *i.e.*, the preparation of federal tax returns for 2007 and 2008, and that Bancroft paid for such services. Thus, under Guy, Bancroft has standing to assert a professional negligence claim against the Hughan Defendants.

II

The Hughan Defendants also assert that Bancroft has failed to state a claim for professional negligence against them under the Twombly standard. After consideration, the Court is compelled to disagree.

Although not a model of clarity, the Second Amended Complaint can be read as alleging the Hughan Defendants failed to complete Bancroft's 2008 federal tax return in time for filing by its due date, and failed to file a request for an

9

extension of the due date. (Docket No. 262, ¶ 82). In addition, the Second Amended Complaint alleges that the 2008 federal tax return prepared by the Hughan Defendants for Bancroft was inaccurate in various respects. (Docket No. 262, ¶ 83). Assuming the foregoing facts to be true, as the Court must do in ruling on a motion to dismiss, a plausible claim of professional negligence is stated in Count V of the Second Amended Complaint.[2]

The Hughan Defendants also contend that Bancroft has failed to state a claim for professional negligence against them because Bancroft's alleged damages "are speculative and, at best, nominal." (Docket No. 285, p. 10). Although Bancroft does assert "vague claims of damages because the Internal Revenue Service purportedly questioned its tax returns, and because Bancroft is allegedly out of compliance with St. Lucia laws and regulations" (Docket No. 285, p. 11), the Court is nevertheless compelled to conclude that it has adequately set forth the fact of damages. As noted by Bancroft, the Hughan Defendants were paid to prepare its 2007 and 2008 federal tax returns and did not perform the work in a timely or accurate

---

[2] In support of their motion to dismiss Count V of the Second Amended Complaint, the Hughan Defendants argue that the federal tax returns prepared for Bancroft were based on the information provided to them by ICMC, and that they cannot be liable for malpractice if Roberts chose to hold the 2008 tax return past the filing deadline. (Docket No. 285, p. 9). The Court agrees with Bancroft that the foregoing arguments raise issues of fact and, therefore, cannot be considered on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). (Docket No. 277, p. 11).

manner. If established, Bancroft did not receive the value of the professional services for which it paid, and, therefore, Bancroft sustained damages. (Docket No. 277, p. 12).

Based on the foregoing, the motion of the Hughan Defendants to dismiss Count V of the Second Amended Complaint is denied.

/s/ William L. Standish
Judge William L. Standish
United States District Judge

Date: June 14, 2012